J. O. CARTER, Administrator of the Estate of H. G. McGREW, deceased, *v.* THE MUTUAL LIFE INSUR- · ANCE COMPANY of New York.

MOTION OF REHEARING.

SUBMITTED MARCH 11, 1896.　　　DECIDED DECEMBER 19, 1896.

JUDD, C.J., FREAR, J., AND CECIL BROWN, ESQ., OF THE BAR, IN PLACE OF WHITING, J., DISQUALIFIED.

The question of the effect of a divorce upon the ownership of a policy of life insurance, or the right to the proceeds thereof, is not a question of the construction of the policy.

The provision in an application for life insurance, that it is made "subject to the charter of the company and the laws of the State of New York," is not an agreement that the question of the effect of a foreign divorce upon the ownership of the policy or the proceeds thereof shall be determined by the statutory law of New York.

By private international law the effect of such divorce should be determined by the law of the place of domicil and divorce.

A rehearing will not be granted for argument by new counsel upon a question raised at the first hearing, but which former counsel chose not to argue, at least if it does not appear that a new argument would probably lead to a different result.

A rehearing will not be granted in order to allow argument upon a question of the constitutionality of a statute, even though that question was not argued at the first hearing, where the unconstitutionality of the statute was not made a ground of the motion for a rehearing and it does not appear that an argument upon the question would probably lead to a reversal of the decision.

Where a court has acquired jurisdiction in divorce proceedings over
both parties at the place of their domicil and afterwards decrees
a divorce, the effect of the divorce upon the disposition of the
personal estate of the wife will not be affected by a change of
residence of the wife previous to the signing of the decree.

OPINION OF THE COURT BY FREAR, J.

The former decision, *ante,* p. 117, in this case was filed
August 15, 1895. On October 4, 1895, new counsel for the
defendant filed a motion for a rehearing, based on a number of
grounds therein set forth. On March 6, 1896, he filed ad-
ditional grounds. Opposing counsel objected to the court's
entertaining the motion on the grounds of defendant's laches
in filing the same and its acquiescence in the judgment. Affi-
davits were filed on both sides. The court thought it best to
hear argument upon the motion itself as well as upon the
preliminary questions of laches and acquiescence, and now, in
view of all the circumstances and of our conclusion, we believe
it will be more satisfactory to consider the motion entirely upon
its merits, without going into the questions of laches and acqui-
escence at all.

The points relied upon by the defendant's counsel in his
able and elaborate brief will be considered in their order. We
regretted much at the first hearing that we were not thus
favored with full argument on behalf of the defendant, except
upon one of the many interesting questions involved in the
case and at that time argued by plaintiff's counsel or suggested
by the court. The decision was rendered at an early date, as
requested on behalf of the defendant, in such light as the court
then had, and yet in the light of the full argument now pre-
sented, we do not find sufficient ground for allowing a rehear-
ing. We come to this conclusion fully realizing both that
if a rehearing should be granted, it would by no means imply
that the former decision was erroneous, and that the merits
of the case are not involved in the disposal of the motion, al-

though, as found by counsel in argument, the merits must necessarily be considered to some extent.

The first point relied on is, that the court manifestly erred in construing the policy as a Hawaiian contract, whereas it appears upon its face to be a New York contract. The case was submitted upon an agreed statement of facts in which it was expressly agreed that the "contract of insurance was made and entered into in the Hawaiian Islands." This is all that was assumed in the decision, namely, in the words "the contract having been entered into in these islands." But it is argued that the agreed statement cannot be construed as an admission that the policy was a Hawaiian contract. If so, the decision also cannot be construed as holding that, for its language is that of the agreed statement.

It is further argued that, if the agreed statement does contain such admission, then counsel, who signed it, exceeded his authority in so doing and the defendant is not bound thereby. If the statement did contain such admission, the court would have been perfectly justified in acting upon it. When a case is submitted to the court upon an agreed statement of facts signed by responsible counsel, it certainly would not be the duty of the court, it would not even be proper, to assume that counsel was acting without authority and then decide the case upon facts directly contrary to those upon which the case was submitted, and especially where as in this case the admission, if made, might under certain circumstances be in accordance with the facts notwithstanding the particular language of the policy or other documents before the court. But it is unneces-sary to decide whether the agreed statement did contain such admission, or, if it did, whether an attorney at law could as such properly make such an admission, or, if not, whether such admission, if made, was in fact authorized or acquiesced in by the defendant itself. For the court did not as matter of fact construe the policy as a Hawaiian contract. It construed it precisely as requested by defendant's counsel (holding that the word "wife" in the policy was a word of description, not

of condition) in accordance with the judicial decisions elsewhere in similar cases, which so far as appears would be followed in New York as well as in Hawaii. Not a single New York decision or statute was then cited upon this point by counsel on either side, but it was assumed by the court and by counsel on both sides that the law upon this question was the same in New York as elsewhere, and the view taken by the court as to what that law is, is conceded by defendant's present counsel to be correct. It is true the court spoke of the contract as "entered into in these islands," but even if those words should be construed as holding that the policy was a Hawaiian contract (a construction which defendant's counsel argues cannot be placed upon similar words in the agreed statement), still the words were inserted in the decision merely for what they were worth. They were not then and are not now regarded by the court as of much importance. The facts of importance, stated in the same sentence, were that the divorce was granted and the parties were domiciled here. Even these facts were not alluded to as having any bearing upon the question of the construction of the policy. The court had finished its comment upon that question and was then upon the question of ownership. And this seems to be the source of misunderstanding in this case. Construction is confused with ownership. If A had possession of certain personal property under a contract it might be a question of the construction of the contract whether A's interest was in his own right, and, if so, what that interest was, or, if A had died, it might be a question of construction whether the property should then pass to A's representatives or to some one else. These questions would be decided by the law of the place of contract. But suppose the contract were construed as having passed the property absolutely to A and his representatives, the further question who were the representatives would be one, not of construction, but of distribution, to be solved by the law of the place, not of the contract, but of A's domicil. Or, suppose A had previously

assigned the property, his representatives would not take at all —not because of an erroneous construction of the contract by the law of domicil or any other law, but because the ownership of the property had changed—a question which might necessarily be determined by some other law, as the law of the place of assignment, if that were a different place. So, if A had become bankrupt and the property had become assigned by operation of law to his assignee in bankruptcy. So, if A had married and the property had passed by law to her husband. So, as in this case, if a divorce had been obtained against her, and the property had thereupon passed to her husband by operation of law. To allow an assignee of a contract to recover, is not to vary the terms of the original contract, but to enforce the terms of the contract of assignment.

It is further argued, that, if the mere fact that the policy is a New York contract is not sufficient to require the New York law to govern in determining the question of assignment by operation of law, as distinguished from the question of construction, yet it is expressly provided in the policy that the New York law should govern and it was competent for the parties to so agree. Let us assume that such an agreement, if made, would have been valid. The provision referred to is not in the policy proper, a copy of which was before the court, but in the application, which, although in terms made a part of the policy, was not before the court and has not to this day been seen by the court. This provision is stated in the brief as follows: "This application is made to the Mutual Life Insurance Co. of New York, subject to the Charter of the Company and the laws of the State of New York." An application which the parties themselves did not make a part of the case and which the court had never had an opportunity of seeing, could not be considered. Even if it had been a part of the case, the court would still have been in the dark as to the provisions of "the Charter of the Company and the laws of the State of New York," no proof of which was made. In the present

counsel's brief, to be sure, reference is made to an old New York statute differing slightly from our own former statute upon the subject under consideration, but no such reference was made at the first hearing and, if it had been made, would it have been sufficient proof of what the New York law is at present, and might not the charter have contained some other provision, for, if the parties may have agreed that the property in the policy should pass in a manner different from that prescribed by Hawaiian law, may they not also have agreed similarly as to New York law?. But, aside from all this, we do not see how an agreement that the application is made subject to the charter of the company and the laws of the State of New York, can be construed as an agreement that the ownership of the policy itself after it was issued or the right to the proceeds thereof should be determined by that charter or those laws. Not merely because the application is not the policy, though a part of it, for even if the policy itself had been issued expressly subject to the same charter and laws (and it probably was issued subject thereto whether expressly so stated or not) this could not mean that the New York statutory law should govern every question that might subsequently arise in relation to the policy—its ownership, the court in which or the procedure by which it should be enforced, the persons who would be the insured's representatives in case he survived his wife, &c. Indeed, New York law must be assumed to include private international law, by which the effect of a divorce upon the ownership of personal property is determined by the law of the place of divorce at least if that is also the place of domicil—the New York statute upon the subject so far as it relates to personal property being presumed to apply only to divorces granted in that state. In considering this question, it should be borne in mind that the specific provision in the policy relating to assignment is not involved.

The company, not having brought the widow into court by interpleader, is in the unfortunate position of being subjected

to two suits—one by the administrator here, the other by the widow in California. It must now rely upon the assumption that the two courts will take the same view of the law. There can be no doubt that the same law should govern whether the action is brought in Hawaii, California or New York. In our opinion that law is the law of the place of domicil and divorce. We can only assume that the California court will take the same view.

The next point relied on is that, if Hawaiian law, that is, the law of the place of domicil and divorce, is to govern, that law did not pass the policy in question to the husband. The statute (Civ. Code, Sec. 1331) provided that "When a divorce is decreed for the adultery * * * of the wife, the husband shall hold her personal estate forever * * *." The argument is that, as the court has held that the former statute (Civ. Code, Sec. 1286) upon the rights of husband and wife, which made the husband "the virtual owner" of the "movable property" of his wife, was substantially an enactment of the common law upon the subject and therefore did not pass the wife's choses in action to the husband until reduced to possession by him, so it must by analogy hold that under the statute now in question the wife's choses in action did not pass to the husband under the description of "personal estate" until reduced to possession and that as the husband did not in this case reduce the policy in question to possession during his lifetime the wife was entitled to it. The question whether the policy was "personal estate" within the meaning of the statute was argued by counsel for the plaintiff at the former hearing, and was considered and decided by the court, though this particular phase of the argument was not gone into. A rehearing should not be granted merely to allow new counsel for the defendant to present argument upon a question raised at the first hearing, but which former counsel for the defendant then chose not to argue, at least where, as we believe to be the case here, a rehearing would probably not result in a different decision. For, even

if it could be assumed from the facts agreed upon that the husband had not reduced the policy to possession during his lifetime, still the statute in question could not, like the other statute referred to, be presumed to have been intended to be an enactment of the common law, so as to be subject to the alleged exception relating to choses in action, for the common law upon this subject was totally different; it did not allow the husband to reduce to possession his wife's choses in action after divorce at all; after divorce he is no longer husband; his right to the wife's choses in action then is not a marital right; marital rights no longer exist; the right is one of property under the statute. The words "personal estate" used in the statute naturally include all personal estate whether in action or possession.

The next point relied on is that the statute in question (Section 1331) was repealed by implication by the Married Woman's Act of 1888. This point was considered by the court before rendering its decision, and, if we remember rightly, was also suggested to counsel at the hearing, but was not touched upon in the decision because counsel had not cared to argue it. Very probably the legislature which passed the Act of 1888 emancipating married women from the harsh provisions of the common law would have also repealed the section in question, if it had been brought to its notice. But this is only a matter of probability as to what would have been done. It was not in fact done. The section is not inconsistent with that Act. It may be regarded as a special provision for a penalty or forfeiture in case of a divorce for the offense of adultery. We are glad to note that the section has since been repealed,—by an Act introduced by Senator Brown who as substitute judge took part in the former decision and now takes part in this.

The point made in the brief that Section 1331 is unconstitutional was not made a ground in the motion for rehearing. We need only add that we fail to see the force of the learned argument upon this point.

The next point is, that Section 1331 did not apply to the property in question because at the time of the divorce neither the wife nor the policy were in this country or within the jurisdiction of the court—the wife because she had gone to California, the policy because, although it remained here in the possession of the husband, being personal property it followed its owner, the wife, in contemplation of law. We presume that by this is meant, not that personal property follows its owner wherever the latter may happen to go temporarily, but that it is governed by the law of the owner's domicil, or residence *animo manendi.* Now there was no proof whatever that the wife in this case intended to change her domicil, which had previously been here, and which in the absence of proof to the contrary would, at least after so short an absence, be presumed to continue here, to say nothing of the rule that the wife's domicil is that of her husband except under certain special circumstances. But, however that may be, both parties were undoubtedly domiciled here when the divorce proceedings were commenced and when the court acquired jurisdiction over them, and that was sufficient so far as the question of domicil was concerned. The court having acquired jurisdiction under these circumstances the incidents of the divorce would follow according to the law of the place of divorce.

Finally, it is argued that the divorce had not become absolute because the exceptions taken in the divorce proceedings had not been disposed of. (Comp. L. p. 437.) The construction of this statute was argued and decided at the first hearing and we are practically asked to go over the same ground again. The only criticism made upon the former decision of this question is based upon a misconstruction of that decision.

The motion for a rehearing is denied.

*W. A. Kinney,* for plaintiff.

*L. A. Thurston,* for defendant.